IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WESLEY A. MASSEY, | ) | |
| | ) | |
| Plaintiff | ) | Case No. 1:17-cv-292 Erie |
| | ) | |
| v. | ) | SUSAN PARADISE BAXTER |
| | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| MICHAEL HOLMAN, et al., | ) | RICHARD A. LANZILLO |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| | ) | |
| Defendants | ) | REPORT AND RECOMMENDATION ON |
| | ) | DEFENDANTS' MOTION TO DISMISS |
| | ) | [ECF NO 31] |
| | ) | |

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I. Recommendation

It is respectfully recommended that Defendants' Motion to Dismiss [ECF No. 31] be granted in part and denied in part. It is further recommended that Defendants Michael Holman, D.W. Bryant, and Jason Stevens be dismissed from this action, with prejudice. Finally, it is recommended that Plaintiff's demand for specific unliquidated damages be stricken from the Complaint.

II. Report

A. Procedural Background

Plaintiff Wesley A. Massey ("Massey") is an inmate in the custody of the Erie County Prison. ECF No. 22 ¶ 4. Massey initiated the instant action on October 30, 2017, seeking redress for alleged violations of his constitutional rights as secured by the First, Fifth, Sixth,

1

Eighth and Fourteenth Amendments to the United States Constitution. ECF No. 22. ¶¶ 3, 35. As Defendants, Massey names Deputy Warden Michael Holman, Deputy Warden D.W. Bryant, and Correctional Officers Jason Stevens, Lt. Lindsey, and B. DeFranco. *Id*. ¶¶ 5-9. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983.[1]

Presently pending before the Court is Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 31. Although Defendants' motion does not explicitly request alternative relief pursuant to Rule 56, Defendants have attached a host of exhibits to their motion to dismiss, none of which appears to have been attached to or relied upon in Plaintiff's Complaint. Because this action is still in the pleadings stage, the Court will reject Defendants' implicit invitation to consider matters outside of the pleadings in resolving the instant motion. Instead, each of Plaintiff's allegations will be evaluated pursuant to the familiar 12(b)(6) standard elucidated below.

B.  Factual Background

On September 8, 2017, Massey helped another inmate, Roman Bronson, file a civil rights complaint against the Erie County Prison. ECF No. 22 ¶ 11. Massey also aided several other inmates in filing grievances against staff members at the prison. *Id*. ¶ 12. Shortly thereafter, Holman and Gardner approached Massey in his housing unit and asked why he was helping other inmates file grievances. *Id*. ¶ 16. Massey explained that other inmates did not understand the grievance process. *Id*. Holman replied, "What's next? Are you going to help [Bronson] file a lawsuit?" *Id*. Massey indicated that he was "ok with helping" other inmates if they needed

---

[1] The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331. This matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).

help. *Id*. Holman responded by moving Massey to another housing unit, away from Bronson. *Id*. ¶ 17.

Upon Massey's arrival in his new housing unit, several inmates again requested his assistance with grievances. *Id*. ¶ 18. On September 25, 2017, Bryant approached Massey and asked, "why are you helping inmates file civil rights lawsuits?" *Id*. ¶ 19. Massey stated that he was simply helping them to fill out and file the correct forms. *Id*. Bryant declared that Massey was "not to help inmates file lawsuits against the facility" and that, if he persisted, Bryant and Holman would "take action." *Id*.

On October 1, 2017, Plaintiff returned to his cell after a cell search and discovered that his legal materials had been moved. *Id*. ¶ 21. When Plaintiff threatened to file a grievance, DeFranco stated, "I don't like your tone, and if you want to grieve, I'll put your ass in the hole. Turn around and put your hands behind your back." *Id*. ¶ 22. DeFranco escorted Massey to the Restricted Housing Unit (RHU), stating: "This is because you think you can continue to help people sue 'us' with no repercussion! Now how are you going to help people from the Hole?" *Id*. ¶ 23.

Massey spent the following eighteen days in a "stripped cell" while being forced to sleep on a metal bunk with no mattress or blankets. *Id*. ¶¶ 24-26. When Massey requested an explanation, Lindsey stated, "We have friends in Crawford County who [you're] suing, and we don't like that, and now you bring your crap up here!" *Id*. ¶ 25.

In addition to the incidents described above, Massey also alleges that Defendants deprived him of his right to access the courts and withheld necessary medical care. These claims, tucked into a single paragraph at the end of Massey's Complaint, consist entirely of the following averment:

> The defendants campaign of harassment continues, with the denial of access to the courts, denial of access to law library as a pro se litigant in my criminal case, that has cause me to miss deadlines, with the federal courts and habeas corpus with the criminal courts, they intermittently deny access to medical care for my diabetes, with deliberate indifference.

*Id.* ¶ 27.

With respect to exhaustion, Massey alleges that he requested a grievance form from prison officials on the following occasions: October 7, 2017 (from a prison "counselor"); October 12, 2017 (again, from the counselor); October 15, 2017 (from Holman); and October 22, 2017 (from the warden of Erie County Prison, a non-defendant). *Id.* ¶¶ 30-33. Massey did not receive a response to any of his requests. *Id.* ¶ 34. As detailed above, Massey also alleges that DeFranco placed him in the RHU and forced him to stay in a stripped cell in direct response to his threat to file a grievance. *Id.* ¶ 22.

    C. Standards of Review

        1. Pro se Litigants

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); *Smith v. U.S. District Court*, 956 F.2d 295 (D.C. Cir. 1992); *Freeman v. Dep't of Corrections*, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a

complaint in favor of the complainant. *Gibbs v. Roman*, 116 F.3d 83 (3d Cir. 1997). *See, e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed. R. Civ. P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990) (same).

    2. Motion to dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower*

*Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S. at 286). *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

D. Analysis

In their motion to dismiss, Defendants contend that dismissal is warranted for several reasons: (1) Massy has failed to exhaust his administrative remedies; (2) the Complaint fails to state a claim upon which relief can be granted; and (3) Defendants are each entitled to qualified immunity. Defendants also maintain that Plaintiff's request for a specific sum of unliquidated damages should be stricken from the Complaint. Each of these arguments will be addressed in turn.

1. Exhaustion

The Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) (the "PLRA"), requires a prisoner to exhaust any available administrative remedies before he may bring an action pursuant to 42 U.S.C. § 1983 challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all claims relating to prison life which do not implicate the duration of the prisoner's sentence. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further, the statute requires "proper exhaustion," meaning that a prisoner's completion of the administrative review process must also satisfy the applicable procedural rules of the prison's grievance system. *Fennell v. Cambria County Prison*, 607 Fed. Appx. 145, 149 (3d Cir. 2015). Failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be pleaded and proven by defendants. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

The exhaustion requirement "admits of one, narrowly defined exception." *Williamson v. Roberts*, 2013 WL 967693, at *4 (W.D. Pa. Mar. 12, 2013). Courts have "invariably held" that "affirmative misconduct by prison officials, designed to impede or prevent an inmate's attempts to exhaust, may render administrative remedies unavailable." *Payne v. Gordon*, 2018 WL 3649025, at *5 (M.D. Pa. Aug. 1, 2018) (citing *Todd v. Benning*, 173 Fed. Appx. 980, 982-83 (3d Cir. 2006)). Thus, if the actions of a prison official directly and affirmatively cause an inmate to procedurally default his grievance, the inmate will not be held to strict compliance with the exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000) (Section 1997e(a) only requires that prisoners exhaust such administrative remedies "as are available"); *McKinney v. Guthrie*, 309 Fed. Appx. 586 (3d Cir. 2009) ("An administrative remedy may be unavailable if a prisoner is prevented by prison authorities from pursuing the prison process."). Examples of affirmative misconduct include, *inter alia*, threatening a prisoner in an attempt to

thwart exhaustion and/or refusing to provide appropriate grievance forms in response to an inmate's inquiry. *See*, *e.g.*, *Harcum v. Shaffer*, 2007 WL 4167161, at *5 (E.D. Pa. Nov. 21, 2007) (finding administrative remedies unavailable where prison officials threatened plaintiff with "opposition to his future prerelease application, parole, or outside work detail if he did not withdraw his grievance"); *Mitchell v. Horn*, 318 F3d 523, 529 (3d Cir. 2003) (exhaustion may be excused where "prison officials denied [an inmate] the necessary grievance forms and, as a result, he lacked 'available' administrative remedies.").

Defendants have submitted several exhibits purporting to demonstrate that Massey failed to fully exhausted any grievance related to the claims asserted in the present lawsuit. However, Massey's Complaint clearly alleges that prison officials refused to provide him with grievance forms in response to specific requests made on October 7, 2017, October 12, 2017, October 15, 2017, and October 22, 2017. ECF No. 22 ¶¶ 30-33. Massey also contends that DeFranco cuffed him and placed him in the RHU for eighteen days in direct response to Massey's threat to file a grievance. *Id*. ¶ 22 (alleging that DeFranco stated, "I don't like your tone, and if you want to grieve, I'll put your ass in the hole" immediately prior to placing Massey in the RHU). These allegations, if factually supported, suggest that prison officials may have directly and affirmatively impeded Massey's ability to exhaust his administrative remedies. *See*, *e.g.*, *Rinaldi v. United States*, 904 F.3d 257, 267 (3d Cir. 2018) (concluding that "administrative remedies are not 'available' under the PLRA where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm"); *Toaz v. Lane*, 2018 WL 1431022, at *3 (M.D. Pa. Mar. 22, 2018) (prison officials' refusal to provide the plaintiff with grievance forms on four occasions created a triable issue of material fact as to whether "administrative remedy procedures [were] rendered unavailable."); *Payne v. Gordon*, 2018 WL 3649025, at *5 (M.D. Pa.

Aug. 1, 2018) (citing threats by prison officials and prison officials' refusal to provide forms as examples of "affirmative misconduct"). In light of these allegations, which must be accepted as true at this stage in the proceedings, Defendants' request for dismissal based on exhaustion should be rejected.[2]

### 2. Failure to State a Claim: Retaliation

Turning to the sufficiency of Massey's factual allegations, Massey first alleges that Defendants engaged in unlawful retaliation by transferring him to another prison unit and placing him in the RHU in response to his legal advocacy on behalf of other inmates. Massey also contends that he experienced retaliation in response to his attempts to file grievances and lawsuits on his own behalf. Defendants maintain that neither allegation is sufficient to support a First Amendment retaliation claim.

In order to state a claim for unlawful retaliation, Massey must allege that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001)). An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). Retaliatory motive can be inferred from either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link. *Id*. (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

---

[2] This issue may be revisited by way of a properly supported motion for summary judgment following discovery, if factually warranted.

To the extent that Massey bases his retaliation claim on his activities as a "jailhouse lawyer," that claim must fail. Courts in the Third Circuit have repeatedly and consistently held that "[i]nmates do not possess an independent First Amendment right to provide legal assistance to fellow inmates." *Horan v. Collins*, 2016 WL 5030468, at *9 (M.D. Pa. Aug. 8, 2016) (citing *Shaw v. Murphy*, 532 U.S. 223 (2001)). *See also Cooper v. Pennsylvania Dept. of Corr.*, 2016 WL 1271327, at *4-5 (M.D. Pa. Mar. 31, 2016) (collecting cases for the same proposition). In the absence of a protected First Amendment right, Massey cannot establish that he engaged in constitutionally protected conduct, a mandatory element of his retaliation claim. *Miller v. Lawler*, 2012 WL 629280, at *15-16 (M.D. Pa. Feb. 3, 2012) (holding that, because inmates have no constitutional right to offer legal assistance to other inmates, such activity does not amount to "constitutionally protected conduct") (citing *Walker v. Campbell,* 2011 WL 6153104, at *5 (W.D. Pa. Oct. 31, 2011)). *See also Hodges v. Mankey*, 2014 WL 7338760, at *7 (W.D. Pa. Dec. 22, 2014) (assisting other inmate in filing grievances "is not protected activity giving rise to a First Amendment claim, and therefore could not form the basis of a Section 1983 claim."). This incurable pleading deficiency mandates dismissal.

A different result is warranted, however, with respect to Massey's contention that DeFranco and Lindsey retaliated against him for filing lawsuits and grievances <u>on his own behalf</u>. There is no question that submitting a grievance (or attempting to submit a grievance) is constitutionally protected conduct. *See*, *e.g.*, *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (filing an administrative grievance and/or a lawsuit are constitutionally protected conduct). The Court of the Appeals for the Third Circuit has acknowledged that placement in administrative or restricted confinement, such as the RHU, is the type of adverse action that can "deter a person of ordinary firmness from exercising his First Amendment rights." *Allah*, 229 F.3d at 225-26

(suggesting that an inmate's confinement in administrative segregation with reduced access to the telephone, commissary, and recreational programs amounted to an adverse action); *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999) ("[A]n action comparable to transfer to administrative segregation would certainly be adverse."). Finally, Massey's transfer to the RHU occurred immediately after he declared his intention to file a grievance. *See Allah*, 229 F.3d at 225 (retaliatory motive can be inferred from an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action). At this stage in the proceedings, Massey's allegation that DeFranco handcuffed him and placed him in the RHU – and that Lindsey endorsed the move – in order to prevent Massey from engaging in protected activity is sufficient to state a plausible First Amendment retaliation claim. Defendants' motion to dismiss should be denied as to this portion of Massey's retaliation claim.

    3. Failure to State a Claim: Cruel and Unusual Punishment

Massey next appears to allege that his placement in the RHU for eighteen days without a pillow or mattress amounted to cruel and unusual punishment in violation of the Eighth Amendment. However, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, . . . only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Restrictions on bedding items, such as sheets, pillows, blankets, and mattresses, do not ordinarily "rise to the level of a deprivation of basic human needs, such as food, clothing, and shelter." *Brooks v. Bledsoe*, 682 Fed. Appx. 164, 170 (3d Cir. 2017). Thus, courts have widely rejected constitutional claims premised on the temporary denial of such items. *See, e.g., Freeman v. Miller*, 615 Fed. Appx. 72, 77-78 (3d Cir. 2015) (finding no violation where suicidal inmate was placed in a "hard cell"

for seven days without a desk, seat, shower, mattress, soap, recreation, mail, or toilet paper); *Adderly v. Ferrier*, 419 Fed. Appx. 135, 139-40 (3d Cir. 2011) (deprivation of clothing, toiletries, legal mail, a pillow, and a mattress for approximately fourteen days "may have been harsh" but did not "constitute a denial of the minimal civilized measures of life's necessities.") (internal quotations omitted); *Alfred v. Bryant*, 378 Fed. Appx. 977, 980 (11th Cir. 2010) ("Objectively speaking, sleeping on a steel bed without a mattress for eighteen days, though uncomfortable, is not so extreme as to violate contemporary standards of decency."); *Knight v. Wapinsky*, 2013 WL 786339, at *5-6 (M.D. Pa. Mar. 1, 2013) (no constitutional violation from being forced to sleep directly on a concrete floor for approximately six weeks in the absence of allegations that the conditions were unsafe or unsanitary). Massey's cruel and unusual punishment claim fails for the same reason.

    4. Failure to State a Claim: Access to Courts and Deliberate Indifference

In two conclusory sentences, Massey declares that prison officials violated his constitutional right to access the courts and displayed deliberate indifference to his serious medical condition. Neither claim is factually supported. For example, in order to establish a denial of access to courts claim, a plaintiff must show: (1) "that they suffered an 'actual injury' in that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim"; and (2) that they have "no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). The complaint must "describe the underling arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Id*. (quoting *Christopher*, 536 U.S. at 416-17). Massey's naked averment that he

"miss[ed] deadlines with the federal courts and habeas corpus with the criminal courts" fails to satisfy either of these elements. ECF No. 22 ¶ 27.

Similarly, a claim based on the deprivation of necessary medical care must include factual allegations detailing: (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990). Massey's untethered statement that unidentified prison officials "intermittently deny access to medical care for [his] diabetes, with deliberate indifference" falls well short of the *Iqbal*/*Twombley* pleading standard.

Compounding the factual deficiencies identified above, Massey elected not to address either of these claims in his brief in opposition to Defendants' motion to dismiss. "To put it simply: plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested." *Lada v. Delaware County Community College*, 2009 WL 3217183, at *10 (E.D. Pa. Sept. 30, 2009). Massey's failure to defend his claims suggests that he has abandoned those theories of liability. *See, e.g.*, *Lawson v. Barger,* 2018 WL 6524382, at *3 (W.D. Pa. Oct. 12, 2018) (plaintiff's failure to address arguments raised in a motion to dismiss warranted inference that plaintiff had abandoned those claims); *Tambasco v. United States Dept. of Army*, 2018 WL 1203466, at *2 (M.D. Pa. Mar. 8, 2018) (dismissing claims as unopposed when the plaintiff failed to respond to arguments made by the defendants in support of their motion to dismiss); *Lada*, 2009 WL 3217183, at *10

(same). Massey's access to courts and deliberate indifference claims should each be dismissed, with prejudice.

5. Lack of Personal Involvement

In a Section 1983 action, "a plaintiff must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)). Despite his obligation to plead personal involvement, Massey's Complaint does not attribute any misconduct – or, indeed, any conduct at all – to Stevens. Moreover, Massey's allegations against Holman and Bryant relate entirely to nonviable legal claims for which dismissal is recommended. In the absence of any factual averments connecting Stevens, Holman or Bryant to Massey's lone surviving retaliation claim, those Defendants must be dismissed from this action for lack of personal involvement.

6. Qualified Immunity

To the extent that any of Massey's allegations are deemed sufficient to state a viable claim, Defendants next contend that their actions are protected by the doctrine of qualified immunity. Qualified immunity "shields government officials performing discretionary functions from 42 U.S.C. § 1983 liability." *Downs v. Borough of Jenkintown*, 2019 WL 1383802, at *9 (E.D. Pa. Mar. 26, 2019) (citing *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 192 (3d Cir. 2005)). However, qualified immunity does not apply if two conditions are met. *Id*. First, the plaintiff must allege facts that "make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Second, the "right at issue [must have been] 'clearly established' at the time of defendant's alleged misconduct." *Id*. "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he

is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). If officials could disagree regarding the legality of their conduct, then qualified immunity should be recognized. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

As noted above, Massey has already stated a viable constitutional claim against DeFranco and Lindsey based on unlawful retaliation. There is no question that the constitutional right at issue was clearly established; indeed, the Court of Appeals for the Third Circuit has repeatedly emphasized that "[r]etaliating against a prisoner for the exercise of his constitutional rights is unconstitutional." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012). The Court has further held that a reasonable prison official in Defendants' position should understand and be aware that retaliating against an inmate for exercising his right to petition is unlawful. *See, e.g., Mack v. Warden Loretto FCI*, 839 F.3d 286, 300 (3d Cir. 2016) (denying qualified immunity because "[a] reasonable [prison official] should . . . have known that retaliating against [an inmate] for exercising his right to petition, whether in the form of an oral or written grievance, was unlawful."). In short, because Massey has pleaded the violation of a clearly established constitutional right, qualified immunity is no defense.

### 7. Specific Unliquidated Damages

Finally, Defendants contend that Massey's demand for $50,000 in compensatory damages and $1,000,000 in punitive damages against each named Defendant must be stricken from his Complaint based on Local Rule 8 of the Local Rules of Civil Procedure. Defendants are correct. Local Rule 8 states that "[n]o party shall set forth in a pleading originally filed with this Court a specific dollar amount of unliquidated damages" except in certain circumstances which do not apply in the instant case. *See* LCvR 8. Massey's demand for specific unliquidated damages must be stricken. *See, e.g., Ramsier v. Allegheny County*, 2016 WL 890603, at *10

15

(W.D. Pa. Mar. 9, 2016) (invoking Local Rule 8 to strike plaintiff's demand for unliquidated damages).

III. Conclusion

For the reasons stated herein, it is respectfully recommended that Defendants' Motion to Dismiss [ECF No. 31] be granted in part and denied in part. Defendants' motion should be granted as to Massey's retaliation claim based on his legal assistance to other inmates, his Eighth Amendment claim for cruel and unusual punishment, and his claims based on denial of access to the courts and deliberate indifference to a serious medical need. Each of those claims should be dismissed, with prejudice. Defendants' motion should be denied as to Massey's retaliation claim based on protected activities undertaken on his own behalf.

It is further recommended that Defendants Michael Holman, D.W. Bryant, and Jason Stevens each be dismissed from this action, with prejudice, for lack of personal involvement.

Finally, it is recommended that Plaintiff's demand for specific unliquidated damages be stricken from the Complaint.

IV. Notice

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, the parties may seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. *See* Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may constitute a waiver of

appellate rights.  *See Brightwell v. Lehman*, 637 F.3d 187, 194 n.7 (3d Cir. 2011); *Nara v. Frank*, 488 F.3d 187 (3d Cir. 2007).

       /s/ Richard A. Lanzillo
       RICHARD A. LANZILLO
       United States Magistrate Judge

Dated: May 14, 2019